### DETROIT & MACKINAC RAILWAY CO. v. MICHIGAN RAILROAD COMMISSION.

1. Railroads—Courts—Michigan Railroad Commission—Regulation of Rates.

    The power to review orders of the Michigan railroad commission, lodged in the courts, is solely to determine whether the rates established are confiscatory, not to establish rates: and if they are so found, the court must refer the matter back to the commission to fix other rates.

2. Same—Equity—Enforcement of Order—Michigan Railroad Commission.

    In proper cases, the court has authority to compel a railroad company, applying to it for relief against the orders of the commission, to perform orders which are found not to be unreasonable or confiscatory. Act No. 300, Pub. Acts 1909 (3 How. Stat. [2d Ed.] § 6524). It is not necessary to resort to mandamus proceedings in such cases.

3. CONSTITUTIONAL LAW—RAILROADS—CARRIERS—DUE PROCESS.

> The act creating the Michigan railroad commission, and empowering it to fix rates, is valid, and since aggrieved parties are authorized to apply to the courts for relief against confiscatory orders, the statute (Act No. 300, Pub. Acts 1909) cannot be said to deprive a railroad corporation of its property without due process of law.

4. APPEAL AND ERROR—EQUITY PLEADING—ANSWER—RAILROADS—STATE—REGULATION.

> Relief not prayed for in the answer of a defendant in chancery will not usually be awarded on appeal: accordingly the decree of this court affirming an order of the decree of the lower court, which dismissed complainant's bill without requiring it to perform the order of the railroad commission, cannot be amended at the request of defendant commission, which did not appeal or request such relief in its answer; the remedy is by mandamus proceedings, pursuant to section 47 of the act.

Bill by the Detroit & Mackinac Railway Company against the Michigan railroad commission to review the action of defendant in certain cases; in which the Onaway Shingle & Tie Company and others intervened as complainants; the Fletcher Paper Company and others as defendants. On motion to amend the final decree in *Detroit & Mackinac Railway Co.* v. *Michigan Railroad Commission*, 171 Mich. 335 (137 N. W. 329). Submitted November 11, 1913. (Calendar No. 24,650.) Denied December 20, 1913.

*Gillett & Clark,* for the motion.

*James McNamara* and *Fred A. Baker, contra.*

OSTRANDER, J.  The Michigan railroad commission made and entered certain orders respectively on October 19, 1909, October 22, 1909, and November 3, 1909. Pursuant to the statute, Act No. 300, Public Acts of 1909, § 26*a*, the railway company began an action in the circuit court in chancery for the county of Wayne against the Michigan railroad commission to vacate

and set aside said orders. Such proceedings were had
that afterwards the said circuit court in chancery en-
tered a decree in said action dismissing the bill of
complaint. Upon appeal, and on July 29, 1912, the
decree was affirmed. It is made to appear that there-
after applications were made both to this court and
to one of the justices of the Supreme Court of the
United States for the allowance of a writ of error to
the Supreme Court of the United States, and that the
said writ was not allowed. Thereafter a bill was filed
by the railway company in the district court of the
United States for the eastern district of Michigan, in
equity, setting up in substance and effect the same
matters presented by the bill in the State court, and
praying for substantially the same relief, and for a
temporary injunction restraining the Michigan rail-
road commission and other defendants, pending the
hearing in the Federal court, from putting into effect
the said orders of the Michigan railroad commission.
A motion for a preliminary injunction was heard by
the district judge and by two circuit judges, and the
injunction was refused for reasons sufficiently indi-
cated by the following excerpt from the opinion which
was filed:

"The sum of the whole matter was that the bill was
dismissed because the complainant did not, with suffi-
cient certainty and clearness, prove the existence of
that confiscation, the presence of which was necessary
to enable courts to give relief. We are satisfied that
the opinion, upon the whole, confirms our view that
the Michigan courts could consider only this question,
and had no legislative or administrative discretion in
determining what was reasonable, and that, therefore,
when complainant resorted to the Michigan courts,
it invoked the protection of the judicial power.

"It follows that the right of the railway company
to such a review as any court could give became fixed
when the order of the commission was promulgated;
that, to prevent an invasion of its legal right, the
railway company could resort to any court of com-

petent jurisdiction; and that, having selected the Wayne circuit court in chancery, and having submitted its controversy to that court, and judgment having been rendered against complainant by that court and by the Supreme Court of Michigan, the railway company cannot now try the same controversy over again in this court." 203 Fed. 864.

See, also, *Puget Sound Electric Railway* v. *Lee* (D. C.), 207 Fed. 860.

From the order denying the motion for a preliminary injunction an appeal has been taken to the Supreme Court of the United States, and is pending.

The Michigan railroad commission, by the attorney general, moves this court to amend its decree in the cause by inserting therein these words:

"And it is further ordered, adjudged and decreed that the said Detroit & Mackinac Railway Company forthwith put in full force and effect the several orders of the Michigan railroad commission heretofore made, in the premises, namely, the order made on October 22, 1909, in a proceeding in which Frank W. Gilchrist, Churchill Lumber Company and Island Mill Lumber Company are complainants, and the Detroit & Mackinac Railway Company is defendant, and the order made October 19, 1909, in a proceeding in which the Fletcher Paper Company is complainant, and the Detroit & Mackinac Railway Company is defendant, and the supplemental order made by said commission in a proceeding between said parties, dated November 3, 1909,"—

Or that, in lieu thereof, the Wayne circuit court in chancery be directed to put the said orders into effect. In opposing the granting of the motion it is urged by the railway company (1) that neither in the answer of the Michigan railroad commission nor in those of intervening defendants in the original action was there a prayer for affirmative relief; (2) that in said action the Wayne circuit court and this court acted in the place of the commission to review and correct, revise or affirm, the orders of the commission; that

the result merely left the orders of the commission in effect and as if no appeal had been taken; (3) the Michigan railroad commission can apply to this court for a writ of mandamus to compel the Detroit & Mackinac Railway Company to comply with the orders of the commission, and, in such a proceeding (mandamus), the railway company will have the right to open the whole case upon the facts, frame issues, and have them sent down for trial, "and on the verdict or findings reported, this court in the exercise of its judicial power can review, modify, reverse, or affirm the order of the commission' as affirmed on the direct appeal;" (4) an application for mandamus would not be entertained by the court while the appeal is pending in the Supreme Court of the United States.

These contentions, except the first and the last one, rest upon the proposition asserted in argument that the power exercised by the court in the proceeding to review the action of the Michigan railroad commission is not judicial in character, and is exercised merely for the purpose of reviewing and of correcting the results of a similar exercise of power by the Michigan railroad commission. In short, that the action in court was a mere continuation of the proceedings before the commission, the court exercising no other or different powers from those exercised by the commission, and addressing itself to the decision of no questions other than those decided by the commission. We are told that in filing its bill of complaint in the circuit court in chancery, and in appealing to this court, the railway company was but pursuing a practice approved by the Supreme Court of the United States in *Prentis* v. *Atlantic Coast Line Co.*, 211 U. S. 210 (29 Sup. Ct. 67), preparatory to thereafter invoking the judicial authority to determine the lawfulness of the orders made by the railroad commission.

If, as is contended, the court acted as an appellate

railroad commission, it may be said that, sitting as such a tribunal, it had no power to order the railway company to put the orders of the commission into effect, and no process to compel such action, because the commission has no such power and can issue no process in that behalf; that, therefore, it has now no power, by amendment of its decree, to require obedience by the railway company to the said orders of the commission.

But if the proposition asserted upon the part of the railway company is unsound, if the court has determined—judicially determined—that the orders of the commission are not unreasonable or unlawful, that their enforcement will not result in confiscation or in unlawfully depriving the company of property, it would seem to follow that the orders of the commission should be immediately enforced, unless there is some arbitrary rule which prevents an amendment of the decree. To insist that the commission shall in all such cases institute mandamus proceedings in this court, in which proceedings the questions of the lawfulness and reasonableness of the orders would necessarily be regarded as having been settled by the decree, would seem to be to prefer form to substance.

This court has not had occasion to examine, generally, and to construe the various provisions of the act of 1909. Many of its provisions were taken from Act No. 312 of the Public Acts of 1907. In *Michigan Central R. Co.* v. *Wayne Circuit Judge,* 156 Mich. 459 (120 N. W. 1073), and in *Michigan Central R. Co.* v. *Railroad Commission,* 160 Mich. 355 (125 N. W. 549), certain orders of the commission were considered; in the first case the question being whether the circuit court should have granted a preliminary injunction restraining the enforcement of the orders of the commission, and in the other (the same case on appeal) whether the act of 1907 was void because it conferred upon the commission executive and legislative powers.

In the Michigan Constitution of 1909, as in the Constitution of 1850, the powers of government are divided, and it is expressly declared that no person belonging to one department shall exercise the powers properly belonging to another, "except in the cases expressly provided in this Constitution." Art. 3, §§ 1, 2. In the Constitution is the further provision:

"The legislature may, from time to time, pass laws establishing reasonable maximum rates of charges for the transportation of passengers and freight on different railroads in this State, and may pass laws establishing reasonable maximum rates of charges for the transportation of property by express companies in this State, and may delegate such power to fix reasonable maximum rates of charges for the transportation of freight by railroad companies and for the transportation of property by express companies to a commission created by law; and shall prohibit running contracts between such railroad companies whereby discrimination is made in favor of either of such companies as against other companies owning connecting or intersecting lines of railroad." Art. 12, § 7.

In neither of the cases referred to nor in *Detroit, etc., R. Co.* v. *Railroad Commission*, 171 Mich. 335 (137 N. W. 329), did the court undertake to review, other than judicially, the orders of the commission. In the first case it was said:

"We do not construe the provisions of this act to lodge in the courts the power to establish rates. The power conferred upon the courts is solely to determine whether the rates are confiscatory or unreasonable. If the courts should so find, they are not authorized to determine what are reasonable, but the matter must again be referred to the commission to establish other rates. If they are found to be reasonable, the courts will sustain the action of the commission. If, however, it should be determined that such power was conferred upon the courts and is unconstitutional, the act would still be held valid, because it could stand with that clause eliminated from the statute. Courts

declare legislative enactments invalid only when they are able .to determine from the act itself that the legislature would not in all probability have enacted the law with the objectionable features eliminated. This act expressly declares that, so long as the main purpose and object of the act can be sustained, any provision held void shall not affect its validity. We are not now prepared to hold that, if all the provisions which counsel for relators now attack should be held void, it would invalidate the entire law. Similar acts have been sustained by the courts of many of the States, and we prefer to reserve this important question until the final hearing."

This was said in view of contentions, one of which was that section 26 of the act conferred upon the courts the power to establish rates if those established by the commission were found to be unlawful or unreasonable. When the cause after hearing came to this court upon appeal, the foregoing and some other portions of the earlier opinion were quoted, and it was said:

"We have thus quoted, perhaps at unnecessary length, from the opinion of Justice GRANT, because it appeared there, as it did upon this hearing, that the rates fixed by the commission are not confiscatory, but afford some remuneration over and above expenses, and because the law expressly makes the rates fixed by the commission *prima facie* lawful and reasonable, and casts the burden of showing the contrary upon the railroad companies contesting, who are the complainants here. While the holding of this court in the mandamus proceeding may not be *res judicata,* yet it shows clearly the view held at that time as to the law of the case."

Sections 26*a* and 26*d* of the act of 1909 are similar to sections found in the act of 1907, the language of which was the ground for the contention that powers other than judicial had been conferred upon the courts. The sections referred to read:

"SEC. 26. *(a)* Any common carrier or other party
178 MICH.—17.

in interest, being dissatisfied with any order of the commission fixing any rate or rates, fares, charges, classifications, joint rate or rates, or any order fixing any regulations, practices or services, may within thirty days from the issuance of such order and notice thereof commence an action in the circuit court in chancery against the commission as defendant to vacate and set aside any such order on the ground that the rate or rates, fares, charges, classifications, joint rate or rates fixed are unlawful or unreasonable, or that any such regulation, practice or service fixed in such order is unreasonable; in which suit the commission shall be served with a subpœna and a copy of the complaint. The commission shall file its answer, and on leave of court any interested party may file an answer to said complaint. Upon the filing of the answer of the commission said action shall be at issue and stand ready for hearing upon ten days' notice by either party. All suits brought under this section shall have precedence over any civil cause of a different nature pending in such court, and the circuit court shall always be deemed open for the hearing thereof, and the same shall proceed, be tried and determined as other chancery suits. Any party to such suit may introduce original evidence in addition to the transcript of evidence offered to said commission, and the circuit courts in chancery are hereby given jurisdiction of such suits and empowered to affirm, vacate or set aside the order of the commission in whole or in part, and to make such other order or decree as the courts shall decide to be in accordance with the facts and the law.   *   *   *

"(d) Either party to said action, within sixty days after service of a copy of the order or judgment of the court, may appeal to the Supreme Court, which appeal shall be governed by the statutes governing chancery appeals. When the appeal is taken the case shall, on the return of the papers to the Supreme Court, be immediately placed on the calendar of the then pending term, and shall be brought to a hearing in the same manner as other cases on the calendar, or if no term is then pending, shall take precedence of cases of a different nature except criminal cases at the next term of the Supreme Court."

In the case in which the pending motion is made, the railway company availed itself of the right, given by the statute, to immediately review the orders of the commission in the courts. The commission had established certain rates and practices. Its orders were in effect—were by the statute made effective—until set aside or the enforcement of them enjoined. They became immediately the foundation of private rights. The railway company addressed itself to the circuit court in chancery for the county of Wayne, charging that the rates, etc., were unreasonable and confiscatory. It did not appeal from the commission to the court, and the statute does not provide for an appeal. It prayed, apparently, for a judicial determination of its rights in the premises, and introduced such testimony as it cared to introduce. Its bill was dismissed. It appealed to this court, and here the decree of the lower court was affirmed. Neither court undertook to determine anything more than that it was not made out that the orders were unreasonable and confiscatory. On the contrary, it affirmatively appears that in both courts it was recognized that, in determining the reasonableness of charges and practices complained about, the commission may consider facts which courts may not consider, and that the court confined itself to a determination of the judicial questions presented, namely, whether the action of the commission was shown to be unreasonable, or would, if enforced, result in confiscation of property. It is true that in the opinion of this court the question whether the legislature had attempted to confer greater powers upon it was not discussed. In view of the previous decisions herein referred to, it was unnecessary to advert to the subject. The proposition now advanced by the railway company receives no support from either of our decisions. What we have held is, in effect, that the legislation in question affords to parties in interest an immediate judicial review of

the orders of the Michigan railroad commission and that the legislation will be held to impose or confer upon the court the power and duty to determine whether the orders of the commission are reasonable, and whether the rates fixed by it are so unremunerative as to be confiscatory. It is not manifest that the application of the legislation in question as so limited and the practice pursued deny to the railway company any constitutional right. *Standard Oil Co.* v. *Missouri*, 224 U. S. 270 (32 Sup. Ct. 406, Ann. Cas. 1913D, 936) ; *State, ex rel. Oregon, etc., Navigation Co.* v. *Fairchild*, 224 U. S. 510 (32 Sup. Ct. 535) ; *Reagan* v. *Trust Co.*, 154 U. S. 362 (14 Sup. Ct. 1047).

We affirm the power of the court, in proper cases, to order by its decree the performance by the railway company of orders which it has found to be not unlawful or unreasonable.

There is, however, a rule of chancery practice long adhered to which denies relief not prayed for, and denies to a nonappealing party relief beyond that granted in the decree by the court below. The rule is not one of form merely, but one of substance, and we are not inclined to make cases like the present exceptional.

Nor is the Michigan railroad commission, nor are the interveners, without remedy. It is provided by section 47 of the act that:

"In addition to all the other remedies provided by this act for the prevention and punishment of any and all violations of the provisions hereof and of all orders of the commissions, the commission, and likewise any person, firm or corporation interested, may compel compliance with the provisions of this act and with the orders of the commission by proceedings in mandamus, injunction or by other appropriate civil remedies."

Whether the pendency of the appeal in the Supreme Court of the United States should prevent the issue of

process to put the orders of the commission into effect is a question we are not now called upon to decide.

The motion to amend the decree is denied, but without costs.

STEERE, C. J., and MOORE, McALVAY, BROOKE, and STONE, JJ., concurred. KUHN and BIRD, JJ., did not sit.